# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| August Kersten, Brian Berube, and Lonesome Dove, Inc., | ) ) ) |
| Plaintiffs, | ) ) **ORDER GRANTING PLAINTIFFS'** |
| | ) **MOTION FOR TEMPORARY** |
| vs. | ) **RESTRAINING ORDER** |
| | ) |
| The City of Mandan, | ) Case No.: 1:19-cv-085 |
| | ) |
| Defendant. | ) |

Before the Court is the Plaintiffs' ex parte "Motion for Temporary Restraining Order" filed on May 21, 2019. See Doc. No. 8. The Plaintiffs seek a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, enjoining the Defendant from enforcing its ordinance regulating murals. For the reasons set forth below, the Court grants the Plaintiffs' motion for a temporary restraining order.

## I.  BACKGROUND

On May 20, 2019, the Plaintiffs filed a verified complaint against the City of Mandan ("Mandan"), asserting claims under 42 U.S.C. § 1983 and the Civil Rights Act of 1871 for violation of the First and Fourteenth Amendments. See Doc. No. 1. The Plaintiffs' claims arise from the enforcement of Mandan's mural regulations against the Lonesome Dove saloon which added a mural to the outside of its building in 2018 depicting a western landscape and the name "Lonesome Dove." Mandan has informed the Lonesome Dove the mural must be removed or penalties will be imposed. The regulations prohibit murals which are commercial in nature or which are placed on the front of a building. The Plaintiffs request the Court enjoin Mandan from enforcing its mural regulations.

The Plaintiffs' verified complaint alleges the following. Plaintiff Lonesome Dove is a western-themed bar which has existed in Mandan, North Dakota, for the last 28 years. The Lonsome Dove is owned by Plaintiffs August Kersten and Brian Berube. It is located in a quasi-industrial area on Memorial Highway surrounded by car dealerships, farm equipment companies, and a livestock-auction barn. Until recently, the building's only decorations were beer ads, including a painted "Coors Light" logo on its front wall. In the summer of 2018, Kersten wanted to brighten up the building and attract new customers. His employees suggested a mural be painted on the exterior of the building. A Lonesome Dove waitress with artistic talent was hired to do the job. She was paid $2,600 to paint a 208-square foot mural on the front of their building, over the Coors Light logo. The mural shows the sun setting over the mountains, with a ranch and three cowboys scattered across the landscape. Rendered across the top of the mural are the words, "Lonesome Dove."





Shortly after the mural was completed, Kersten and Berube received a "notice of violation" dated October 22, 2018. See Doc. No. 1-2. The notice said that Lonesome Dove was "in violation of the City of Mandan Municipal Ordinances" because it had "an unpermitted mural." The notice further stated that "either the mural can be removed or an application may be submitted for a mural permit . . . . There is no guarantee that it will be approved." The letter noted that the violation was an infraction that carried a fine of up to $1,000.

Kersten and Berube were unaware they had to secure permission from Mandan before putting up a mural. They had never sought permission for the painted Coors Light logo that had been displayed on Lonesome Dove's wall for a decade without incident.

Mandan ordinance Section 105-1-15 regulates signs. Section 105-1-15(b) defines a "figurative wall mural" as "an illustration, diagram or design, not intended to sell a product or to advertise an establishment, that is used for aesthetic purposes or to enhance architectural features of a building." See Doc No. 1-3, p. 6. Section 105-1-15(j)(9) requires those wishing to display a sign

3

or wall mural secure prior approval from the Mandan Architectural Review Commission ("MARC"). See Doc No. 1-3, p. 11. On August 21, 2018, Mandan adopted seven additional "Building Mural Guidelines" for MARC to administer. See Doc. No. 1-4. Those guidelines prohibit murals that (1) "convey a commercial message," (2) use words that are a "dominant feature of the art," or (3) have "political messages." The guidelines also ban murals "on the front of a building as determined by the property's street address," but may be located on building "sides or alleys."

On October 31, 2018, Lonesome Dove submitted a mural permit application along with the required $50 fee. Over the next five months, three separate hearings were held regarding the mural. On November 13, 2018, MARC considered Lonesome Dove's application and unanimously voted to reject the permit. See Doc. No. 1-8, p. 4. In a letter dated December 3, 2018, Mandan notified the Plaintiffs that the application was denied. See Doc. No. 1-11. The notice also stated that because Lonesome Dove's mural conveyed a commercial message, it was technically not a "mural" under the code, but a "sign." As a result, the second notice of violation stated that "Application permit was for a mural, application needs to be for a sign. Please resubmit sign application." Finally, the notice stated that "if compliance is not made this violation is an Infraction with up to $1,000 fine." Mandan City Code Section 1-9(c)(5) allows fines to accrue daily. See Doc. No. 1-3, p. 4 ("With respect to violations of this Code that are continuous with respect to time, each day the violation continues is a separate offense").

On December 13, 2018, Lonesome Dove submitted a second application to MARC, this time for a sign. MARC considered the sign application on January 8, 2019, and again unanimously rejected it. See Doc. No. 1-7, p. 3. MARC explained Section 105-1-15(z)(4) prohibits signs from being printed directly on the building. In a letter dated January 28, 2019, the City wrote that the sign

4

permit was denied because:

> 1. Section 105-1-15 (z)(3) No combination of wall signs and supports shall exceed 20 percent of the signable wall surface area up to a maximum of 200 square feet unless other limits are approved by the MARC.
>
> 2. Section 105-1-15 (j)(9) No sign or wall mural shall be painted on any building without prior approval from the MARC.

See Doc. No. 1-12.

Lonesome Dove appealed the denial of its sign permit application to the City Board of Commissioners ("Board"). The Board rejected the appeal on March 19, 2019. The Mandan City Police sent the Plaintiffs a Notice of Violation dated April 18, 2019, which informed them the sign was in violation of city code for the following reasons:

> 1. Section 105-1-15 (j)(9) No sign or wall mural shall be painted on any building without prior approval from the MARC.
>
> 2. Section 105-1-15 (z)(4) Signs printed directly on exterior walls or surface of a building shall be prohibited.

See Doc. No. 1-15. The notice gave the Plaintiffs until May 23, 2019, to remove the sign. It further stated that "[f]ailure to comply . . . will result in a court appearance where fines and penalties will be assessed by a Municipal Judge."

The Plaintiffs filed this action challenging the constitutionality of Mandan's mural and wall ordinances in federal court on May 20, 2019. See Doc. No. 1. Plaintiffs filed an ex parte motion for a temporary restraining order on May 21, 2019, seeking to enjoin Mandan from requiring them to remove the sign/mural. See Doc. No. 8. Counsel for the Plaintiffs has submitted a letter detailing efforts to notify Mandan of the lawsuit and the motion for a temporary restraining order. See Doc. No. 8-2.

## II. STANDARD OF REVIEW

Plaintiffs seeks a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, which provides in relevant part as follows:

> **(b) Temporary Restraining Order.**
>
> **(1) *Issuing Without Notice.*** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b).

The United States Supreme Court has recognized that in some limited situations, a court may properly issue ex parte orders of brief duration and limited scope to preserve the status quo pending a hearing. Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974); Carroll v. Princess Anne, 393 U.S. 175, 180 (1968). The limited nature of ex parte remedies

> reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, cf. Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 180 . . . (1968), but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

Granny Goose Foods, 415 U.S. at 438-39 (emphasis in original).

Rule 65(b) directs the court to look to the specific facts shown by an affidavit to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In addition, it is well-established the court is required to consider the factors set forth in Dataphase Systems, Inc.,

v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981) in determining whether a temporary restraining order should be granted. The *Dataphase* factors include "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id.

III.    **LEGAL DISCUSSION**

It is well-established that the movant has the burden of establishing the necessity of a temporary restraining order. Baker Elec. Co-op., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989). No single factor is dispositive, in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction. Baker Elec. Co-op., Inc., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987)).

   A.    **PROBABILITY OF SUCCESS ON THE MERITS**

When evaluating a movant's "likelihood of success on the merits," the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" Calvin Klein Cosmetics Corp., 815 F.2d at 503 (quoting Dataphase, 640 F.2d at 113). At this preliminary stage, the Court need not decide whether the party seeking the temporary restraining order will ultimately prevail. PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007). Although a temporary restraining order cannot be issued if the movant has no

7

chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty percent likelihood that he will prevail on the merits.'" Id. (quoting Dataphase, 640 F.2d at 113). The Eighth Circuit has also held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). A likelihood of success on the merits of even one claim can be sufficient to satisfy the "likelihood of success" *Dataphase* factor. See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F. Supp. 2d 1073, 1078-80 (D.N.D. 2009).

The Court finds the Plaintiffs have demonstrated they are likely to succeed on the merits of their claims. Based on the limited record before the Court, it appears that at least some portions of Mandan's prohibition on commercial murals are clearly not content neutral. The Building Mural Guidelines state "[t]he mural or art may not convey a commercial message." See Doc. No. 1-4. The Supreme Court and the Eighth Circuit Court of Appeals have both explained that content-based restrictions are suspect. See Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015); Neighborhood Enterprises, Inc. v. City of St. Louis, 644 F.3d 728, 737 (8th Cir. 2011). The First Amendment protects both signs and commercial speech. Neighborhood Enterprises, 644 F.3d at 736 (signs); 1-800-411-Pain Referral Serv., LLC v. Otto, 744 F.3d 1045, 1054 (8th Cir. 2014) (commercial speech).

In this case, Mandan prohibits all murals which convey a commercial message while allowing other murals whose messages are not commercial. Clearly, the regulation is based on the content of the speech and thus is not content neutral. See Neighborhood Enterprises, 644 F.3d at 736 (noting that if "the message conveyed determines whether the speech is subject to the restriction"

8

the regulation is impermissibly content-based). The Supreme Court has struck down other restrictions that treated commercial speech differently from non-commercial speech. See Sorrell v. IMS Health Inc., 564 U.S. 552, 572–73 (2011) (declaring unconstitutional restriction on pharmacies selling certain information to pharmaceutical companies for marketing purposes when the same information could be sold and used for other, non-commercial purposes); City of Cincinnati v. Discovery Network, 507 U.S. 410, 429–31 (1993) (declaring unconstitutional City's ban on news racks dispensing commercial publications when City allowed news racks dispensing non-commercial publications). Commercial speech is valuable and serves an important public function. Bates v. State Bar of Arizona, 433 U.S. 350, 364 (1977). Such a content-based restriction on speech as Mandan has enacted is unlikely to survive constitutional muster.

### B.   OTHER FACTORS

Having shown that Lonesome Dove is likely to succeed on the merits, the remaining *Dataphase* factors--regarding irreparable injury, the public interest, and the balance of equities--are easily disposed of. Phelps-Roper v. Nixon, 509 F.3d 480, 485 (8th Cir. 2007), modified on reh'g, 545 F.3d 685 (8th Cir. 2008) ("In a First Amendment case, therefore, the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue.").

First, it is well-established in the Eighth Circuit that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Johnson v. Minneapolis Park & Recreation Bd., 729 F.3d 1094, 1101–02 (8th Cir. 2013) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). "Likewise, the determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the First Amendment

challenge because it is always in the public interest to protect constitutional rights." Phelps-Roper, 509 F.3d at 485. Finally, "[t]he balance of equities, too, generally favors the constitutionally-protected freedom of expression." Id. This is particularly the case here, where a TRO will not require the City to take any action or obligate any funds. The only effect of a TRO will be to allow Lonesome Dove to display its mural without penalty during the pendency of this litigation.

IV.  **CONCLUSION**

The Court has carefully reviewed the entire record and the *Dataphase* factors and finds the Plaintiffs have met their burden under Rule 65(b) of establishing the necessity of an *ex parte* temporary restraining order. Preservation of the status quo until a hearing can be held and the record fully developed is in the best interests of all the parties. Accordingly, the Court **GRANTS** the motion for a temporary restraining order (Doc. No. 8). The Defendant and any person or entities acting in concert with or on behalf of the Defendant, are **TEMPORARILY RESTRAINED AND ENJOINED** from taking any enforcement action against the Plaintiffs related to the mural painted on the exterior of the Lonesome Dove, including requiring the Plaintiffs to remove it.

In addition, the Court **ORDERS** the following:

1) A hearing will be held in Courtroom One of the U.S. District Court for the District of North Dakota, in Bismarck, North Dakota, on **Wednesday, June 5, 2019, at 1:30 p.m.** to determine whether a preliminary injunction should be issued.

2) At the hearing, the Plaintiffs shall be prepared to show cause why a preliminary injunction should be issued. If the Plaintiffs fail to do so, "the court must dissolve the [restraining] order." Fed. R. Civ. P. 65(b)(3).

3) At the hearing, the Defendant shall be prepared to show cause why the City should not be preliminarily enjoined during the pendency of this action.

4) At any time, the Defendant may file a motion to dissolve or modify this temporary restraining order in accordance with Rule 65(b)(4) of the Federal Rules of Civil Procedure. The Defendant may also contact the U.S. District Court to modify the time or date of the scheduled hearing.

5) The temporary restraining order will not become effective until the Plaintiffs serve the order on the Defendant. The Plaintiffs shall arrange for the immediate service of this order together with the Plaintiffs' motion for a temporary restraining order (Doc. No. 8), memorandum in support (Doc. No. 8-1), the verified complaint (Doc. No. 1) and all the supporting exhibits, and shall promptly file proof of service with the Court.

6) No bond shall be required to be posted by the Plaintiffs before the temporary restraining order is effective.

7) In accordance with Rules 65(b)(2), this order expires in 14 days or on or before June 5, 2016, at the same hour of this Order, unless the Court, for good cause, extends the order "for a like period or the adverse party consents to a longer extension."

**IT IS SO ORDERED.**

Dated at 3:00 p.m. this 22nd day of May, 2019.

/s/ *Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court